# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br>        Plaintiff,<br><br>                v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br>        Defendant. | CV 20-6920 DSF (Ex)<br><br>Order DENYING Plaintiff's Motion for Summary Judgment (Dkt. 49) and GRANTING Defendant's Motion for Summary Judgment (Dkt. 50) |

Plaintiff Admiral Insurance Company moves for partial summary judgment as to certain elements of its claims and select affirmative defenses of Defendant ACE American Insurance Company (AAIC). Dkt. 49-1 (Admiral Mot.).  AAIC moves for summary judgment on all of Admiral's claims.  Dkt. 50 (AAIC Mot.).  The Court deems these matters appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  Admiral's Motion is DENIED.  AAIC's motion is GRANTED.

## I. UNDISPUTED FACTS

On April 4, 2014, Hartford Fire Insurance Company filed an action against Gateway Science & Engineering in Los Angeles Superior Court (Superior Court Action) and brought claims for negligence, professional negligence, negligent misrepresentation, comparative

equitable/implied indemnity, and declaratory relief.  DSUF ¶¶ 1, 2; PSUF ¶ 1.[1]

The Superior Court Action arose out of construction of the Los Angeles Mission College Media Arts Center (the Project), part of the Los Angeles Community College District (LACCD).  DSUF ¶ 3. Gateway was contracted to provide basic services, including project and construction management, development of a management plan, preparation of monthly cost reports and project schedules, initiation of team meetings, and monitoring and evaluating the Project.  PSUF ¶ 1. Its contractual obligations did not include preparing or approving shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; supervising or inspecting architectural or engineering activities; performing engineering, architectural, or surveying services; or providing or hiring professionals to provide engineering, architectural or surveying services.  Id. ¶ 2.

Hartford alleged the following in the Superior Court Action:

- LACCD hired SMC Construction as the Project's general contractor and Gateway as the construction manager.  DSUF ¶ 4.

---

[1] Citations to DSUF refer to Plaintiff Admiral Insurance Company's Statement of Genuine Disputes in Support of Opposition to Defendant Ace American Insurance Company's Motion for Summary Judgment or in the Alternative Partial Summary Judgment, dkt. 55-1, which incorporates AAIC's proposed uncontroverted facts and Admiral's responses.  Citations to PSUF refer to Ace American Insurance Company's Statement of Genuine Disputes and Additional Material Facts in Support of Opposition to Plaintiff Admiral Insurance Company's Motion for Partial Summary Judgment, dkt. 56-1, which incorporates Admiral's proposed uncontroverted facts and AAIC's responses.  To the extent certain facts are not mentioned in this Order, the Court has not relied on those facts in reaching its decision.  To the extent the Court cites to a disputed fact, the Court has found that the dispute was not valid or was irrelevant, unless otherwise indicated.  The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

- The services rendered by the defendants, including Gateway, included construction management, inspection, specialty inspection, engineering, and architectural services.  Id. ¶ 5.

- After SMC terminated its contract with LACCD based on LACCD's default, LACCD demanded Hartford complete the work under SMC's contract.  Id. ¶ 7.  Hartford hired a completion contractor who commenced work on the project in April 2012, and found damages related to the structural steel.  Id. ¶¶ 8-9.

- Gateway "negligently, carelessly and wrongfully" failed to use reasonable care in overseeing, managing, monitoring, inspecting, and testing work on the Project.  Id. ¶ 11.  This was despite Gateway making numerous representations that it had thoroughly and properly inspected work on the Project.  Id. ¶ 12.

- Gateway's breaches caused significant damages, including compensatory damages, property damage, and impact and delay damages.  PSUF ¶ 4.

On July 16, 2014, Hartford filed a complaint in arbitration against Gateway and others, alleging the same claims (the Arbitration). DSUF ¶ 14.  The Superior Court Action was stayed and ultimately dismissed; the dispute proceeded in arbitration.  Id. ¶ 15.  The complaint in arbitration again alleged Gateway "negligently, carelessly and wrongfully failed to use reasonable care and skill in overseeing, managing, coordinating, monitoring, inspecting and/or observing work and/or improvements on the Project."  Id. ¶ 16.

Both AAIC and Admiral defended Gateway in the Superior Court Action and Arbitration (collectively, the Underlying Actions).  Id. ¶ 19. AAIC had issued a general liability primary policy, effective February 15, 2010 through February 15, 2014, and an excess policy, effective February 15, 2010 through May 20, 2015 (collectively, the AAIC Policies).  Id. ¶ 20.  The AAIC Policies insured contractors and subcontractors that performed work at the Project, which included Gateway as the construction manager.  Id. ¶¶ 22, 24.

The AAIC Policies provided AAIC would pay those sums the insured became obligated to pay because of bodily injury, property damage, or personal and advertising injury.  Id. ¶ 25.  However, endorsement 11 of the AAIC Policies excluded coverage for bodily injury, property damage, or personal and advertising injury that arises out of the rendering of or failure to render any professional services by the insured or any engineer, architect, or surveyor working for the insured.  Id. ¶ 26.  "Professional services" is defined to include the preparing, approving, or failing to approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications, and supervisory, inspection, architectural, or engineering activities.  Id. ¶ 26.

Additionally, endorsement 6 of the AAIC Policies further excludes bodily injury, property damage, or personal and advertising injury arising out of the rendering or for failure to render any professional services by the insured or on the insured's behalf, but only with respect to providing engineering, architectural, or surveying services to others, and providing or hiring others to provide engineering, architectural, or surveying services in connection with construction work the insured performs.  Id. ¶ 27.

Admiral issued a policy to Gateway effective December 9, 2012 through December 9, 2013 (the Admiral Policy).  Id. ¶ 29.  The Admiral Policy provided Admiral would pay sums that the insured was legally obligated to pay for a claim that resulted from a "professional incident." Id. ¶ 30.  "Professional incident" is defined as a negligent act, error, or omission in the rendering of or failure to render "professional services" by an insured or a person acting under the insured's direction, control, or supervision and for whose acts, errors, or omissions the insured is legally liable.  Id. ¶ 31.  "Professional services" is defined as work performed by the insured for others involving specialized training, knowledge, and skill in the pursuit of business stated in the "Declarations."  Id. ¶ 32.  The Declarations describe Gateway's business as "Construction Management (Agency Only) and Construction Inspection Services."  Id. ¶ 33.  The Admiral Policy excludes coverage for liability arising out of the cost to repair or replace faulty

4

workmanship.  Id. ¶ 34.  The Admiral Policy also contains a condition that Gateway shall maintain a Commercial General Liability (CGL) policy and provides that it does not apply to liability for any claim for which coverage is provided by the CGL policy.  Id. ¶ 35.

On June 20, 2019, AAIC entered into a settlement of the claims asserted in the Underlying Actions on behalf of Gateway and other insureds for $3.6 million.  Id. ¶¶ 38-39.  Hartford allocated $360,000 to partially resolve its claims against Gateway.  PSUF ¶ 7.  Hartford's release from liability in the settlement agreement extends only to damages because of property damage, bodily injury, or personal and advertising injury.  DSUF ¶ 41.  The settlement also provided that, should Hartford obtain a judgment against Gateway in the Underlying Actions for damages because of property damage, bodily injury, or personal and advertising issue, Hartford would not take any action to record or collect such a judgment.  Id. ¶ 43.

The settlement was approved by the court and the arbitrator in the Underlying Actions.  Id. ¶¶ 45-46.  AAIC continued to defend Gateway in the Underlying Actions through their dismissal.  Id. ¶ 44.  A copy of the proposed settlement agreement was provided to Admiral in May 2019.  Id. ¶ 47.  Gateway retained personal counsel.  PSUF ¶ 11.  On June 19, 2019, Gateway's personal counsel demanded AAIC cease and desist from all settlement efforts that did not result in a full release of Gateway's liability from Hartford's claims in the Underlying Actions.  Id. ¶ 12.  AAIC moved forward with the settlement.  Id. ¶ 13.  On July 27, 2019, Admiral reached its own settlement with Hartford on behalf of Gateway, which resolved the remaining claims against Gateway in the Underlying Actions for $2.5 million.  DSUF ¶ 48.  Gateway did not pay anything toward either settlement or its defense in the Underlying Actions.  Id. ¶ 50.  Gateway assigned its rights to Admiral.  PSUF ¶ 16.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which

5

summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

If the moving party satisfies its burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing there exists a genuine issue for trial.  Celotex Corp., 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 248.  "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (punctuation omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted).  In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them.  Id.

## III. DISCUSSION

AAIC moves for summary judgment as to each of Admiral's remaining six claims.  AAIC Mot.  Admiral moves for partial summary judgment on AAIC's first, sixteenth, and seventeenth affirmative defenses, and to establish that Admiral has demonstrated two elements of its unjust enrichment claim, and two elements of its breach of the implied covenant claim.  Dkt. 49.  Generally, "[i]nterpretation of an insurance policy presents a question of law governed by the general rules of contract interpretation."  Waller v. Truck Ins. Exch., Inc., 11 Cal 4th 1, 18 (1995).

## A.     Requests for Judicial Notice

The Court GRANTS the parties' unopposed requests for judicial notice as to: the complaints filed in the Underlying Actions, the motion for good faith determination in the Arbitration, the arbitrator's order on the settlement motion, the order to stay in the Superior Court Action, the request for dismissal filed in the Superior Court Action, and the order confirming the arbitrator's award in the Superior Court Action.  See dkts. 49-9, 50-3, 56-4.  The Court may take judicial notice of such exhibits as the records of other courts.  See Fed. R. Evid. 201(b); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (quotation marks and citation omitted)).  "This extends to documents filed in connection with arbitration proceedings."  Bucur v. FedEx Ground Package Sys. Inc., No. EDCV 15-01117-JGB (KKx), 2015

WL 13285090, at *1 n.2 (C.D. Cal. Sept. 10, 2015).  The remaining requests for judicial notice are DENIED as moot.

## B.    Evidentiary Objections

The parties make various evidentiary objections.  See dkts. 56-3, 59-1, 60-1.  The Court has not relied on any of the evidence objected to and therefore OVERRULES all the objections as moot.

## C.    Equitable Indemnity (Claim 5)

Equitable indemnity is one of three equitable claims potentially available where several insurers cover the same event.  "Equitable indemnity applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party."  United Servs. Auto. Ass'n v. Alaska Ins. Co., 94 Cal. App. 4th 638, 644-45 (2001) (quotation marks omitted).  "The basis for the remedy of equitable indemnity is restitution," i.e., "[o]ne person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay."  AmeriGas Propane, L.P. v. Landstar Ranger, Inc., 184 Cal. App. 4th 981, 989 (2010) (quoting Children's Hosp. v. Sedgwick, 45 Cal. App. 4th 1780, 1786 (1996)).

AAIC first argues Admiral cannot establish it paid amounts for which AAIC was primarily liable because Hartford released all claims covered under the AAIC Policies when it settled with Admiral.  AAIC Mot. at 9.  Therefore, any claims it settled with Admiral could not have been valid claims under the AAIC Policies, as Hartford had already released such claims.  See id.  Admiral argues the release of claims in the AAIC/Hartford settlement did not dissolve Admiral's equitable indemnity claim and points to an unpublished case, Namo Co., LLC v. Peerless Insurance Co., No. A132370, 2014 WL 2933237 (Cal. App. Ct. June 30, 2014).  Dkt. 55 (Admiral Opp'n) at 6-7.  In Namo, the issue was whether the scope of a release between the plaintiff tenants in the underlying action and Namo included Namo's equitable indemnity claim against Peerless.  2014 WL 2933237, at *9.  The court held that the release, by its plain language, did not include a release of any

claims Namo might have against Peerless; instead the tenants and Namo released their claims against each other.  Id.  Therefore, Namo could bring an equitable indemnity claim against Peerless.  Id.  Namo is inapposite.  AAIC is not arguing that *Admiral* released its claims against AAIC through the AAIC/Hartford settlement.  It is arguing that *Hartford* released all its claims covered under the AAIC Policies. The Court agrees with AAIC.  AAIC obtained a release of all claims under the AAIC Policies, so AAIC could not be liable for any further settlement.

AAIC further argues that, should Admiral have resolved any property damage claims that were released, it did so as a volunteer. AAIC Mot. at 12.  In the insurance context, a "volunteer" is an insurer who was under "no legal or moral obligation to pay under the circumstances" but did so.  United Pac. Ins. Co. v. Hanover Ins. Co., 217 Cal. App. 3d 925, 934-35 (1990).  However, "[a]n insurer's good faith settlement prior to a judicial determination of coverage does not automatically bar equitable apportionment of a loss."  Id. at 935.

Admiral asserts the volunteer doctrine is inapplicable because there was a coverage dispute.  Admiral Opp'n at 9-10.  However, because AAIC secured a release of all claims under the AAIC Policies from Hartford, the coverage dispute was not between AAIC and Admiral, but rather Admiral and Hartford.  If Admiral believed certain costs it paid were not covered under the Admiral Policy, it should not have settled for those costs with Hartford knowing that Hartford had released all rights to such claims.  In Mercury Insurance Co. v. Enterprise Rent-A-Car Co. of Los Angeles, 80 Cal. App. 4th 41, 50 (2000), as modified (Apr. 24, 2000), an appellate court found Mercury was not entitled to subrogation from Enterprise "as it was not obligated to make the payment because its insured had not exhausted Enterprise's coverage."  Here, Hartford *had* exhausted AAIC's coverage when it released any claims it had that were covered by the AAIC Policies.  Admiral was not obligated to make any payments covered by the AAIC Policies, not because there was a coverage dispute, but rather because Hartford no longer had any such claims.  Any payment was therefore voluntary.

The Court GRANTS AAIC's motion for summary judgment on Admiral's equitable indemnity claim.

## D.    Equitable Subrogation (Claim 6)

"Principles of equitable subrogation rather than equitable contribution apply to disputes between insurers when the insurers do not share the same level of risk."  <u>Travelers Cas. & Sur. Co. v. Am. Int'l Surplus Lines Ins. Co.</u>, 465 F. Supp. 2d 1005, 1027 (S.D. Cal. 2006); <u>see also</u> <u>Fireman's Fund Ins. Co. v. Md. Cas. Co.</u>, 65 Cal. App. 4th 1279, 1299 (1998) (equitable subrogation applies in a situation where "the claimed loss was one for which the [insurer who compensated the insured] was *not* primarily liable, and justice requires that loss be shifted to the [insurer] whose equitable position was inferior").  The elements of an insurer's cause of action for equitable subrogation are:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1292.

For the reasons stated above, Admiral's equitable subrogation claim also fails.  Admiral cannot establish it suffered a loss for which it was not primarily liable and that it paid the claim to protect its own interest and not as a volunteer.  The Court GRANTS summary judgment to AAIC on Admiral's equitable subrogation claim.

### E.   Unjust Enrichment (Claim 8)

Under California law, the elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another."  Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014) (quoting Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)), abrogated on other grounds by Microsoft Corp. v. Baker, 137 S. Ct. 1702 (2017).  "This equitable test does not turn merely on the transfer of money or other benefits from one party to another – it requires injustice."  Id. (citing Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 684 (9th Cir. 2009)); see also Otworth v. S. Pac. Transp. Co., 166 Cal. App. 3d 452, 460 (1985) ("The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched.").  "Restitution is not mandated merely because one person has realized a gain at another's expense.  Rather, the obligation arises when enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'"  Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C., 61 Cal. 4th 988, 998 (2015) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (Am. L. Inst. 2011)).

No reasonable jury could find that this is a case where the enrichment "lacks any adequate legal basis."  AAIC settled all claims under the AAIC Policies with Hartford.  Admiral then settled for Gateway's remaining liability with Hartford, and now seeks to argue some of those claims fall under the AAIC Policies, even though if that were the case, Hartford should not have obtained any settlement from Admiral for such claims.

The Court GRANTS summary judgment to AAIC on Admiral's unjust enrichment claim.

## F.    Breach of Written Contract – Duty to Indemnify (Claim 3)

AAIC argues Admiral's claim for breach of written contract, duty to indemnify, fails because (1) Admiral does not allege any provision of the contract was breached, (2) AAIC cannot have breached a duty to indemnify absent judgment, (3) Gateway has no damages to assign because it did not pay for any settlement, and (4) AAIC resolved all covered claims under the AAIC Policies.  AAIC Mot. at 15-20.  The Court agrees with AAIC's fourth argument and, therefore, does not address the remaining three.

Admiral's claim fails because AAIC settled all claims covered under the AAIC Policies.  AAIC Mot. at 19-20.  Insurers have a duty to indemnify policyholders only for covered claims.  See Blue Ridge Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 502-03 (2001) ("[T]he insurer only has a duty to indemnify the insured for covered claims, and no duty to pay for noncovered claims because the insured did not pay premiums for such coverage."); Marie Y. v. Gen. Star Indem. Co., 110 Cal. App. 4th 928, 957-58 (2003) (holding insurer did not have a duty to indemnify where there was no coverage nor potential for coverage).  By definition, Hartford could not have recovered for any claims covered under the AAIC Policies because it had released all such claims.  Because the AAIC Policies did not cover the claims settled by Hartford and Admiral, AAIC was under no duty to indemnify Admiral or Gateway.  The Court GRANTS AAIC's motion for summary judgment as to Admiral's third claim.

## G.    Breach of the Implied Covenant of Good Faith and Fair Dealing – Duty to Indemnify (Claim 4)

The covenant of good faith and fair dealing is implied in every contract, including insurance policies.  Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000), as modified (July 26, 2000).  "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that

frustrates the other party's rights to the benefit of the agreement. <u>Waller</u>, 11 Cal. 4th at 36.  "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." <u>Guebara v. Allstate Ins. Co.</u>, 237 F.3d 987, 992 (9th Cir. 2001) (applying California law).  "Where benefits are withheld for proper cause, there is no breach of the implied covenant." <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1151 (1990).

The Court has held AAIC had no duty to indemnify Admiral or Gateway.  Therefore, AAIC withheld its benefit for proper cause, and Admiral's covenant of good faith claim fails.  The Court GRANTS summary judgment to AAIC on Admiral's fourth claim.

## H.    Breach of the Implied Covenant of Good Faith and Fair Dealing – Duty to Settle (Claim 7)

Under California law, the implied covenant of good faith and fair dealing as to the duty to settle,

> obligates the insurance company . . . to make reasonable efforts to settle a third party's lawsuit against the insured.  If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach.

<u>PPG Indus., Inc. v. Transamerica Ins. Co.</u>, 20 Cal. 4th 310, 312 (1999). AAIC argues Admiral's breach of the implied covenant, duty to settle, fails because (1) AAIC settled all claims covered under its policies, (2) AAIC's conduct was reasonable as a matter of law, and (3) Gateway has no damages resulting from the alleged failure to settle.  AAIC Mot. at 21-25.

AAIC is not obligated to settle claims not covered under the AAIC Policies.  <u>Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau</u>, 15 Cal. 3d 9, 19 (1975) ("[W]e cannot accept defendant's complaint that the

Comunale rule requires an insurer to settle in all cases irrespective of whether the policy provides coverage.  Clearly, if defendant's belief that the policy did not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle . . . .").  By the terms of the Hartford/AAIC settlement agreement, AAIC settled all covered claims.  Therefore, AAIC withheld benefits for proper cause, and Admiral's implied covenant claim fails.  The Court GRANTS summary judgment to AAIC on Admiral's seventh claim.

## I.   Affirmative Defenses

Because the Court has granted summary judgment to AAIC on all of Admiral's claims, Admiral's motion for summary judgment on AAIC's affirmative defenses is moot.

## IV. CONCLUSION

AAIC's motion for summary judgment is GRANTED.  Admiral's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Date: June 30, 2021

Dale S. Fischer
United States District Judge